## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:11-cv-00331-MR
## [Criminal Case No. 1:07-cr-00033-MR-DLH-9]

| | | |
|---|---|---|
| HAROLD EUGENE PATTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1], as supplemented [Doc. 12], and the Government's Motion for Summary Judgment [Doc. 4].

## I.    PROCEDURAL HISTORY

From January 2002 until April 2007, Petitioner Harold Eugene Patton and eleven other named defendants conspired with each other and others to distribute crack cocaine in Burke County, North Carolina.  [Criminal Case No. 1:07-cr-00033-MR-DLH-9, Doc. 228 at ¶ 10: PSR].  As part of the investigation into Petitioner's role in the conspiracy, agents made undercover purchases of crack cocaine from Petitioner and interviewed

numerous co-conspirators who relayed that they bought from or sold to Petitioner crack cocaine before and during the timeframe of the conspiracy. [Id. at ¶¶ 12-26; 29; 31-32]. Agents executed a search warrant at Petitioner's home (which he shared with his brother, co-defendant John Patton) and seized a rifle, cocaine base residue, and $453. [Id. at ¶ 27]. When advised of the ongoing federal investigation, Petitioner responded that he did not care about the seized cash because "he would make that back by tomorrow by selling more crack." [Id.]. Based on the undercover purchases and interviews of co-conspirators, investigators attributed a total of 182.2 grams of cocaine base to Petitioner. [Id. at ¶ 33].

On April 3, 2007, a federal grand jury in the Western District of North Carolina returned an indictment charging Petitioner and eleven others with conspiracy to distribute at least 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). See [Id., Doc. 1: Indictment]. Attorney Jason Hayes was appointed to represent Petitioner. [Id., Doc. 34]. A few weeks before Petitioner's trial was to begin, the Government filed a § 851 Information setting forth Petitioner's six previous convictions for "felony drug offenses." [Id., Doc. 90: Notice Pursuant to 21 U.S.C. § 851]. On July 11, 2007, two days into the court's trial term but before the trial began,

Petitioner entered into a written plea agreement with the Government in which he agreed to admit guilt as to the charged conspiracy offense. [Id., Doc. 142: Plea Agreement].

The written plea agreement set forth three separate minimum and maximum penalties — ten years to life imprisonment, twenty years to life imprisonment, or mandatory life imprisonment — depending on whether Petitioner had one or more qualifying felony drug offenses. [Id. at ¶ 3]. As part of the plea agreement, the parties also agreed that the amount of crack cocaine attributable to Petitioner was at least 50 grams but less than 150 grams. [Id. at ¶ 6(a)]. Petitioner also waived his constitutional rights to challenge his conviction or sentence on appeal or by collateral attack, except in instances of ineffective assistance of counsel, prosecutorial misconduct, or if the district court made some finding on a previously unanticipated guideline issue that the court certified to be "of such an unusual nature as to require review by the Fourth Circuit Court of Appeals." [Id. at ¶ 19]. Finally, the plea agreement included the standard "Assistance to the Government" section, which required Petitioner to truthfully cooperate with the Government and testify, if called to do so, and, if this cooperation rose to the level of "substantial assistance," Petitioner agreed

that the Government "may" make a motion for a sentence below the applicable statutory minimum or guideline sentence. [Id. at ¶¶ 22; 23(b)].

The Magistrate Judge thoroughly questioned Petitioner on the terms of the plea agreement and the voluntariness of his decision to plead guilty at the Rule 11 hearing. [Id., Doc. 341 at 2-19: R. 11 Tr.]. The Magistrate Judge specifically outlined the minimum and maximum penalties outlined in the plea agreement, including that Petitioner could be sentenced to mandatory life imprisonment, and Petitioner stated that he understood these penalties. [Id. at 8; see also id., Doc. 148 at ¶ 12: Acceptance and Entry of Guilty Plea]. The Magistrate Judge also questioned Petitioner on his waiver of appellate and post-conviction rights, and Petitioner stated that he was voluntarily waiving those rights. [Id., Doc. 341 at 16-17; see also Doc. 148 at ¶ 34]. Counsel for the Government summarized the terms of the plea agreement, noting that Petitioner would be called to render assistance to the Government's case later that day. [Id., Doc. 341 at 15].

On April 18, 2008, Attorney Hayes, who had represented Petitioner through the guilty plea, moved to withdraw as counsel. [Id., Doc. 236: Motion to Withdraw]. Attorney Hayes represented to the Court in his motion that Petitioner had become "visibly angry, hostile and verbally

threatened counsel stating, 'I'm facing life here, and I have nothing to lose. Do you know what I'm saying?'" [Id.]. Attorney Hayes continued that Petitioner repeated this line several more times and that he (Attorney Hayes) "felt physically threatened." [Id.]. Based on these representations, the Court allowed Attorney Hayes to withdraw and appointed Attorney Walter Daniels to represent Petitioner for the remainder of the proceedings. [Id., Doc. 237: Order; Doc. 238: CJA 20].

On June 25, 2008, nearly a year after he pled guilty, Petitioner moved to withdraw his guilty plea, arguing he did not have the close assistance of competent counsel, that Attorney Hayes led him to believe that he would avoid a life sentence by entering into the plea agreement, and that he was factually innocent. [Id., Doc. 250 at 2: Motion to Withdraw Plea of Guilty]. In his motion, Petitioner noted that the PSR stated that his sentencing exposure was mandatory life imprisonment. [Id. at 1; 4]. Petitioner further alleged that he was unaware that the Government had filed a § 851 Notice and that he "maintain[ed] his innocence to selling or being involved with the quantities attributed to him . . . ." [Id. at 7]. The gist of Petitioner's motion to withdraw was that prior counsel made a "massive error" in failing to

correctly assess and advise Petitioner of his potential mandatory life sentence. [Id. at 12].

The Government responded, noting that Petitioner entered his guilty plea "immediately prior to his scheduled jury trial," that he did so hoping to cooperate in the trial of his co-defendant brother, and that, after the Rule 11 hearing, agents interviewed Petitioner, but he "did not provide truthful or complete information and was uncooperative with the interviewing agents." [Id., Doc. No. 253 at 2]. The Government further alleged that Attorney Hayes worked hard with his client and with the agents to secure some cooperation benefit for his client, but Petitioner was simply "not cooperative." [Id. at 5-6].

On July 29, 2008, this Court denied Petitioner's motion to withdraw his guilty plea. [Id., Doc. No. 263: Memorandum and Order]. In its order, the Court noted that Petitioner pled guilty "two days after the trial term began," that the PSR determined Petitioner faced a mandatory life sentence, and that "Defendant did not fully cooperate with the Government as agreed upon in the plea agreement and thus forfeited any potential motion for downward departure by the Government." [Id. at 2; 3 n.1]. The Court further found that Petitioner's responses at the Rule 11 hearing

indicated his plea was knowing and voluntary and that there was no error in the Rule 11 proceeding. [Id. at 8]. The Court also found that Petitioner was advised of the potential of a mandatory life sentence, both at the Rule 11 hearing and with the Government's § 851 notice. [Id. at 13]. In sum, the Court found that Petitioner "fully understood the nature of the Rule 11 proceeding, freely acknowledged his guilt to the charge herein under oath, and knowingly entered into a plea agreement with the Government wherein he agreed, but ultimately failed, to cooperate with the Government in exchange for the Government's filing a motion for downward departure on his behalf." [Id. at 15]. The Court concluded that none of the factors under United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991), warranted withdrawal of his guilty plea and therefore denied Petitioner's motion. [Id. at 16-17].

The probation officer submitted a final PSR on September 3, 2008, which determined that Petitioner was responsible for 182.2 grams of crack cocaine but applied the lower amount (50 grams to 150 grams) to which the parties had stipulated and further determined that Petitioner had six prior qualifying drug felonies and therefore faced a mandatory life sentence. [Id., Doc. 273 at ¶¶ 33; 40; 112-13: PSR]. Petitioner objected to the attributed

drug amount, arguing that he was in prison for large stints of time during the alleged conspiracy. [Id., Doc. 281 at 2-5: Second Motion to Withdraw Plea of Guilty and PSI Objections]. The probation officer responded that the drug amount was based on the parties' stipulation in the plea agreement and that, even if the Court sustained Petitioner's objections, the sentence would remain the same. [Id., Doc. 291 at 29-32: Revised Final PSR].

The Court convened the sentencing hearing on November 19, 2008. Petitioner again objected to the drug quantity but appeared to concede that, even if the drug amount were reduced, Petitioner would still be responsible for 50 grams or more of crack cocaine. [Id., Doc. 315 at 4: Sent. Hrg. Tr.]. The Court denied Petitioner's objections and again found that Petitioner understood all aspects of and the consequences of his decision to plead guilty. [Id. at 5-6]. The Government buttressed this finding, noting that Petitioner was given multiple chances to cooperate but each time Petitioner "continued to play some . . . kind of game [ ]" and ultimately did not cooperate. [Id. at 8]. With the attributable drug amount and Petitioner's qualifying drug felonies, Petitioner faced a mandatory life sentence, and the

Court sentenced him accordingly. [Id. at 9; see also id., Doc. No. 299: Judgment].

Petitioner appealed his conviction, alleging ineffective assistance of counsel by Attorney Hayes and abuse of discretion by this Court in denying his motion to withdraw his guilty plea. In an unpublished, per curiam opinion dated September 15, 2010, the Fourth Circuit affirmed, holding that the record did not conclusively establish that Hayes was ineffective and that this Court did not abuse its discretion in denying Petitioner's motion to withdraw his guilty plea. United States v. Patton, 396 F. App'x 6, 7 (4th Cir. 2010).

Petitioner timely filed the instant petition under § 2255 on December 12, 2011, alleging four grounds of relief: (1) that his guilty plea was not knowing or voluntary because Attorney Hayes misled him about the sentencing range he faced, assuring him he faced only a sentence of four years and four months and never warned him of the possibility of a mandatory life sentence; (2) that Attorney Daniels provided ineffective assistance of counsel for failing to "properly argue" the motion to withdraw Petitioner's guilty plea, arguing that counsel failed to request a hearing or present evidence in support of the motion; (3) that Attorney Daniels was

ineffective at sentencing and on appeal for failing to argue Petitioner had only one qualifying drug felony predicate; and (4) that Petitioner's sentence of life imprisonment was a "fundamental miscarriage of justice due to actual innocence of mandatory life and 4B1.1 sentence," in light of <u>Carachuri-Rosendo v. Holder</u>, 130 S. Ct. 2577 (2010), and the Fourth Circuit's <u>en banc</u> decision in <u>United States v. Simmons</u>, 649 F.3d 237 (4th Cir. 2011). [<u>Id.</u> at 8].

In response to Petitioner's claim that his plea was not knowing and voluntary because of Attorney Hayes' alleged poor advice to Petitioner regarding his potential sentence, Attorney Hayes provided an affidavit to the Government. [Doc. 3-1: Hayes Affidavit]. In his affidavit, Attorney Hayes relayed that he reviewed with Petitioner "all reports, statements, etc. provided in discovery," and that he and Petitioner discussed the strength of the Government's case against Petitioner and any possible defenses. [<u>Id.</u> at 2]. Attorney Hayes also relayed that he "discussed with [Petitioner] at length and on numerous occasions all minimum and maximum penalties applicable to his charges." [<u>Id.</u>]. They "specifically discussed the highest range of possible punishment of life imprisonment due to the government's filing of the 21 USC 851 notice." [<u>Id.</u>]. Attorney Hayes relayed that he

discussed with Petitioner the possibility of a downward departure, but he specifically advised Petitioner that such a departure was only available if he provided substantial assistance in compliance with the "Assistance to Government" section of his plea agreement. [Id.]. Attorney Hayes also stated that he never advised Petitioner that a sentence of four years and four months was a possibility. [Id.].

Attorney Daniels also reviewed Petitioner's motion and provided an affidavit responding to the allegations against him. See [Doc. 3-2: Daniels Affidavit]. Attorney Daniels' affidavit recounts the procedural posture of Petitioner's case and the steps he took to move to withdraw Petitioner's guilty plea and to minimize the drug quantity attributable to him. [Id. at ¶¶ 2-7]. Attorney Daniels relayed that he and Petitioner discussed filing a petition under § 2255 and other possibilities for a sentence reduction, and, during these discussions, Petitioner related that he wanted Daniels to continue representing him and that he wanted to make ineffective assistance claims against Attorney Hayes only. [Id. at ¶¶ 9-10].

## II.   STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on

which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56).

## III.    DISCUSSION

### A.    Involuntary Guilty Plea Claim

Petitioner first alleges that his guilty plea was unknowing and involuntary because he was misinformed and uninformed about the possible sentence he faced. He avers that Attorney Hayes "assured him that his sentence would be 4 years and 4 months if he pled guilty," and he avers that neither Attorney Hayes, counsel for the Government, nor the court ever informed him of the mandatory minimum sentences. Petitioner insists that "but for these gross errors and misrepresentations," he would have pleaded not guilty and proceeded to trial.

Petitioner's allegations, however, are directly contradicted by the record. The transcript of the Rule 11 proceeding reflects that Petitioner was advised that depending on the number of his prior drug felonies that he potentially faced a mandatory life sentence. Petitioner specifically acknowledged at the Rule 11 hearing that he understood the explanation of the minimum and maximum penalties. This Court may rely on the Petitioner's statements made under oath that he understood this aspect of his guilty plea. <u>United States v. Lemaster</u>, 403 F.3d 216, 221 (4th Cir. 2005). Petitioner was informed of his mandatory penalties not only at the Rule 11 hearing by the Magistrate Judge, but he was also informed in his written plea agreement, which he signed, and by Attorney Hayes, as

Attorney Hayes stated in his affidavit. In sum, Petitioner was informed numerous times by numerous sources of the potential penalties he faced.

Furthermore, the finality of Petitioner's guilty plea must be given great weight. Recognizing that "'[t]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system,'" the Fourth Circuit noted in Lemaster that "[t]he advantages of plea bargains 'can be secured, however, only if dispositions by guilty plea are accorded a great measure of finality.'" Id. at 219-20 (quoting Blackledge v. Allison, 431 U.S. 63, 71 (1977)).

Thus, "because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," when a defendant makes "solemn declarations in open court affirming a plea agreement," this testimony carries "a strong presumption of verity." Id. at 221. Accordingly, in the § 2255 context, "because they do carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings." Id. (quotation omitted).

For this reason, the Fourth Circuit has held that "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly

conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"  Id. at 221 (citation omitted).  The Lemaster Court's examples of an "extraordinary circumstance" are circumscribed to an obviously and admittedly ineffective attorney whose performance rendered a plea involuntary, or a plea entered by an un-counseled defendant who provided documentary proof that he was both physically and mentally ill during the Rule 11 hearing.  Id. (citing White, 366 F.3d at 300, and Fontaine v. United States, 411 U.S. 213 (1973)).  In a § 2255 proceeding, the petitioner bears the burden of proving "extraordinary circumstances." Id.  And unless the petitioner sufficiently does so, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.  Otherwise, a primary virtue of Rule 11 colloquies would be eliminated–'permit[ting] quick disposition of baseless collateral attacks.'" Lemaster, 403 F.3d at 221-22 (quoting Blackledge v. Allison, 431 U.S. 63, 79 n.19).

Here, the record establishes that Petitioner's plea was knowingly and voluntarily made, and Petitioner has not demonstrated otherwise. His first claim is therefore denied.

### B. Ineffective Assistance of Counsel Claims

Petitioner also raises two claims of ineffective assistance of counsel against Attorney Daniels. First, he alleges that Attorney Daniels was ineffective for failing to "properly argue" the motion to withdraw the guilty plea. Second, he argues that Attorney Daniels was ineffective for failing to challenge several of his prior drug felonies as invalid predicates and for failing to argue for a lower sentence under the Fair Sentencing Act. As explained below, Petitioner cannot demonstrate prejudice as to his first claim or deficient performance as to his second.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong."  United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### 1.    Counsel's Motion to Withdraw Guilty Plea

Petitioner contends that Attorney Daniels improperly argued the motion to withdraw guilty plea before this Court and on appeal, because he failed to request a hearing, failed to question Petitioner's former counsel, and failed to submit an affidavit from Petitioner attesting to the allegations raised in the motion.  A review of the record, however, leads to the

conclusion that even if Attorney Daniels had taken these steps, it would not have made a difference in the ultimate denial of the motion to withdraw. This Court premised its denial of the motion to withdraw on Petitioner's answers at the Rule 11 hearing, the adequacy of the hearing, and the <u>Moore</u> factors, all of which weighed against granting the motion to withdraw. Even if Attorney Daniels had requested a hearing or submitted an affidavit from Petitioner, the motion still would have been denied for the same reasons it was denied in the first place. Questioning Attorney Hayes would have hurt, not helped, Petitioner's cause, as Hayes' affidavit makes clear that he did inform Petitioner of the consequences of his plea, including the minimum and maximum penalties and the strength (or weakness) of the Government's case. In other words, Petitioner cannot demonstrate <u>Strickland</u> prejudice.

### 2. Counsel's Failure to Challenge Predicate Drug Felonies or Argue FSA Retroactivity

Petitioner contends that Attorney Daniels was also ineffective for failing to challenge Petitioner's prior convictions as qualifying predicate felonies for purposes of the § 851 notice and for failing to argue on appeal that the Fair Sentencing Act would have applied to his case. Petitioner's argument fails on both fronts. First, to the extent that Petitioner argues that

Attorney Daniels provided constitutionally deficient representation by failing to challenge the use of Petitioner's prior drug convictions to support the enhancement of his sentence, Petitioner's claim fails. As the Court discusses, infra, Petitioner had two predicate felony convictions, even after Simmons; thus, he was properly found to be subject to a mandatory minimum sentence of life imprisonment. In any event, even if the prior convictions were not predicate felonies in light of Simmons, Petitioner's case concluded well before Simmons was decided.[1] Accordingly, Petitioner's argument that Attorney Daniels was ineffective for failing to argue that his prior drug convictions do not count as qualifying predicates is without merit.

Petitioner's Fair Sentencing Act argument similarly fails. Petitioner was sentenced in November 2008. At that time, any defendant found guilty of conspiring to possess with intent to distribute 50 grams or more of crack cocaine was subject to a statutory minimum sentence of ten years of imprisonment, twenty years of imprisonment if he had one prior drug felony,

---

[1] Specifically, Petitioner entered into his guilty plea with the Government in July 2007, nearly four years before Simmons was decided in September 2011, and Petitioner was sentenced in November 2008, approximately three years before Simmons was decided and more than a year-and-a-half before the Supreme Court even issued its decision in Carachuri-Rosendo v. Holder, 130 S. Ct. 2577 (June 14, 2010), upon which Simmons is based. Likewise, Petitioner's appellate brief was filed in October 2009, months before Carachuri-Rosendo was decided and nearly two years before Simmons was decided.

and mandatory life imprisonment if he had two or more qualifying felonies. See 21 U.S.C. § 841(b)(1)(A) (2009). In the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372, which was signed into law August 3, 2010, Congress increased the quantity of crack cocaine necessary to trigger certain mandatory minimum sentences in § 841. The FSA is not retroactive to defendants, like Petitioner, who were sentenced prior to the enactment of the FSA, thus foreclosing Petitioner's claim for relief. See Dorsey v. United States, 132 S. Ct. 2321, 2336 (2012) (holding that the FSA applies retroactively to offenders whose crimes preceded the effective date but who were sentenced after the effective date of August 3, 2010). Thus, counsel was not ineffective for failing to argue on Petitioner's appeal that the lower penalties under the FSA should apply to Petitioner because, even if he had presented this argument, it would have failed.

### C. Simmons Claim

Finally, the Court notes that Petitioner initially brought a Simmons claim, in which Petitioner argued that he had only one predicate felony under Simmons and therefore his mandatory life sentence is a "fundamental miscarriage of justice" in light of Carachuri-Rosendo and Simmons. Initially, the Government agreed with this assertion, but both

parties have now conceded that Petitioner had two prior predicate felonies, even after <u>Simmons</u>.  [<u>See</u> Docs. 16, 18].  Thus, as conceded by the parties, Petitioner is not entitled to <u>Simmons</u> relief.  Accordingly, this claim will also be denied.

## IV.    CONCLUSION

For the reasons stated herein, the Court will grant the Government's summary judgment motion as to all claims.

The Court finds that Petitioner has not made a substantial showing of a denial of a constitutional right.  <u>See generally</u> 28 U.S.C. § 2253(c)(2); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (<u>citing</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000)).  Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that his Motion to Vacate states a debatable claim of the denial of a constitutional right.  <u>Slack</u>, 529 U.S. at 484-85.  As a result, the Court declines to issue a certificate of appealability.  <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Government's Motion for Summary Judgment [Doc. 4] is **GRANTED** and Petitioner's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1], as supplemented [Doc. 12], is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

Signed: August 6, 2014

**IT IS SO ORDERED.**

Martin Reidinger
United States District Judge