# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:07-cr-00033-MR-WCM-9

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HAROLD EUGENE PATTON, ) <br> ) <br> Defendant. ) <br> _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's "Motion for a Reduced Sentence Pursuant to Sec. 404 of the First Step Act of 2018" [Docs. 644, 645; as supplemented, Doc. 661]. The Government consents to the Defendant's Motion. [Doc. 664].

**I.    BACKGROUND**

Between 2002 and 2007, the Defendant Harold Eugene Patton participated in a drug-trafficking conspiracy that operated in Burke County, North Carolina and involved the distribution of crack and powder cocaine. [Doc. 291 at ¶ 10]. Patton was a street-level dealer, responsible for the distribution of approximately 182 grams of crack cocaine. [Id. at ¶¶ 13-33].

A federal grand jury indicted the Defendant and charged him with conspiring to possess with intent to distribute at least 50 grams of crack cocaine. [Doc. 1 at 1-2]. The Government filed an information under 21 U.S.C. § 851, notifying the Defendant that it intended to seek an enhanced penalty under 21 U.S.C. § 841(b)(1)(A) because the Defendant had previously been convicted of six felony drug offenses. [Doc. 90].

The Defendant subsequently entered into a written plea agreement with the Government, agreeing to plead guilty to the conspiracy offense. [Doc. 142 at ¶ 1]. In the plea agreement, the parties stipulated that the Defendant was accountable for at least 50 but less than 150 grams of crack cocaine. [Id. at ¶ 6(a)]. This Court accepted the Defendant's plea as knowingly and voluntarily entered. [Doc. 148 at 9].

In the Presentence Report, the probation officer calculated a base offense level of 30 based on the Defendant's responsibility for at least 50 but less than 150 grams of crack cocaine. [Doc. 291 at ¶ 40]. The probation officer also classified the Defendant as a career offender, increasing his adjusted offense level to 37. With a three-level reduction for acceptance of responsibility, his total offense level was reduced to 34. [Doc. 291 at ¶¶ 46, 48]. Based on a total offense level of 34 and a criminal history category of VI, the Sentencing Guidelines advised a range of between 262 and 327

2

months' imprisonment. [Id. at ¶ 113]. Because the Defendant had previously been convicted of multiple felony drug offenses, however, he faced a statutory mandatory minimum term of life in prison for the drug-trafficking-conspiracy offense pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851. [Id. at ¶ 112]. In November 2008, this Court sentenced the Defendant to life in prison and a ten-year term of supervised release. [Doc. 29].

In October 2016, President Barack Obama commuted the Defendant's sentence to 235 months' imprisonment, leaving intact and in effect the ten-year term of supervised release.[1] [Doc. 584].

The Defendant now moves for a reduction of sentence under the First Step Act. [Docs. 644, 645; as supplemented, Doc. 661]. The Government consents to the reduction of the Defendant's sentence to a time served sentence. [Doc. 665].

## II. DISCUSSION

A threshold question is whether the Court has any authority to disturb a sentence set by a grant of executive clemency. Even though the Court of Appeals for this Circuit has never decided this issue, two members of that

---

[1] The President's order is entitled "Executive Grant of Clemency." The relevant portion reads "I hereby further commute the total sentence of imprisonment imposed upon Harold Eugene Patton . . . to a term of 235 months' imprisonment, leaving intact and in effect the 10-year term of supervised release with all its conditions and all other components of the sentence." [Doc. 584 at 1,3].

3

Court have provided their views. One has opined that a prisoner in the position of the Defendant is "no longer serving a judicially imposed sentence, but a presidentially commuted one. *The President's commutation order simply closes the judicial door.*" United States v. Surratt, 855 F.3d 218, 219 (4th Cir. 2017) (Wilkinson, J., concurring) (emphasis added). The "judicial door" is closed because a motion to modify an *executive* sentence is non-justiciable. Id. A different member of the same court, in the same case, opined that "the part of the sentence that remains after commutation *is part of a judicial sentence*, not a newly created executive sentence." Id. at 221 (Wynn, J., dissenting) (emphasis added). The implication of this second view is that this Court has the authority to reduce the *judicial* portion of such a sentence in the same manner and on the same basis as with any other judicially imposed sentence.

To answer this threshold question, the Court must first look to the Constitution itself. Article III § 1 states that: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Hence, the President's authority to commute a sentence is not a judicial power, all such power being held exclusively in another branch. The power to commute is, therefore, solely an executive one. That power is rooted in Article II § 2,

4

which states that the President "shall have Power to grant Reprieves and Pardons for Offenses against the United States...."

Interestingly, the Constitution makes no express mention of commutations. This, however, is not surprising. The verb "to commute" means to exchange one for another. Imposing a wholly new sentence in place of a judicially imposed one would itself be a judicial act. But the executive has been granted no judicial powers. The drafters of the Constitution, being the semantic sticklers that they were, did not leave us with such an ambiguity. Nonetheless, it has gone unquestioned that the President has the authority to reduce (if not technically commute) a sentence, and that this authority arises from the Reprieve/Pardon power. See, e.g., Schick v. Reed, 419 U.S. 256 (1974).

The language used in Article II, § 2 closely follows that of Blackstone on this topic. At common law a reprieve was temporary in nature, such as a temporary stay of the execution of a woman who is pregnant. Blackstone's Commentaries Book 4 Ch. 31 (1769). A pardon, on the other hand, was a complete abrogation of a judicial judgment, even if provided prior to the entry of judgment. Id. A pardon, however, could be conditional upon the prisoner serving some alternate penalty, such as transportation to the colonies. Id.

5

This might imply that the President's authority to commute a sentence derives from this power to conditionally pardon. The commutation is an abrogation of the judicially imposed sentence on the condition that the defendant serve the new sentence imposed as a condition. See Surratt, 853 F.3d at 219 (Wilkinson, J., concurring). A more precise analysis, however, would be that the authority to commute a sentence derives from the power to reprieve. For instance, a judgment of death could be stayed indefinitely, thus rendering a result that is the equivalent of a commutation to life imprisonment. Such prisoner would continue to be held pursuant to the judgment *of the court* which found him guilty. See Blackstone, supra. It is not that he must serve his prison sentence as a condition of his reprieve from death, but rather that the court's judgment ordains that he be imprisoned *because of* his reprieve. Both reprieve and pardon are in the nature of a grant of mercy, providing a remission of a penalty judicially imposed. Pardon is a complete remission, and reprieve is a temporary remission. What is commonly called a commutation is a partial remission. Thus, the judicially imposed judgment still stands, though a portion of the penalty imposed therein has been abrogated.

This appears to be how the federal courts have analyzed this issue. See, e.g., Duehay v. Thompson, 223 F. 305, 307-08 (9th Cir. 1915) (stating

that in commuting a sentence, "the executive has superimposed its mind upon the judgment of the court; but the sentence remains, nevertheless, the judgment of the court, and not of the executive, and is subject to the regulations of law respecting its enforcement"). In fact, the Supreme Court has held (albeit in a very different context) that the court retains such authority to modify a sentence as it would otherwise have, notwithstanding a presidential commutation, provided the modification does not undo the President's action. United States v. Benz, 282 U.S. 304, 311 (1931). If the commuted sentence were a new sentence exclusively imposed by the executive as a condition of an erstwhile pardon, the court would retain no such power. See also Simpson v. Battaglia, 458 F.3d 585, 595 (7th Cir. 2006); Madej v. Briley, 371 F.3d 898, 899 (7th Cir. 2004); United States v. Hearst, 638 F.2d 1190, 1193 (9th Cir. 1980).

Having determined that the Defendant is serving a sentence that is an amalgam of the actions and authority of the Court and the President, the Court must ascertain the boundaries of its authority in examining and revising the Defendant's sentence. Neither the executive nor the court is unbridled. "It is certainly conceivable that the President, through the exercise of his commutation power, could encroach upon the authority or functions of one of the coordinate branches in a manner that would impermissibly 'offend the

7

Constitution.'" United States v. Libby, 495 F. Supp. 2d 49, 55 (D.D.C. 2007) (quoting Schick, 419 U.S. at 266 (1974)).  Likewise, the Court should step carefully so as not to encroach upon the authority already exercised by the executive.  It should not be forgotten that Congress is no passive player in this constitutional dance.  Congress passed (and the President signed) the First Step Act, which forms the basis for the particular judicial function that the Defendant asks this Court to exercise.

Based on all the foregoing, the Court determines that the Defendant is serving a judicial sentence, except that the term of imprisonment has been capped by executive action at 235 months.  Therefore, the Court has the authority, to the extent granted by Congress in the First Step Act, to modify the Defendant's sentence, provided the Court does not seek to impose a term of imprisonment longer than 235 months.

Section 404 of the First Step Act of 2018, Pub. L. 115-391, gives retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010.[2]  Section 404(a) defines a "covered offense" as "a

---

[2] Section 2 of the Fair Sentencing Act of 2010, Pub. L. 111-220, increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841.  Specifically, it raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the (b)(1)(B) threshold from "5 grams" to "28 grams."  Section 3 eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Congress did not apply these changes retroactively to defendants sentenced before the Act's passage.  Accordingly, the Defendant could not obtain relief under the Fair Sentencing Act.

violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 404(b) then provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed."

The Defendant is eligible for relief under the First Step Act because he was convicted of a "covered offense" under Section 404(a)'s definition. See United States v. Wirsing, 943 F.3d 175 (4th Cir. 2019). His offense was committed before August 3, 2010; he was subjected to the enhanced statutory penalties under § 841(b)(1)(A); and those statutory penalties were "modified by Section 2 . . . of the Fair Sentencing Act." Further, the Defendant's sentence has not been previously reduced by the operation of Sections 2 or 3 of the Fair Sentencing Act of 2010, and no previous motion has been made by the Defendant pursuant to Section 404 of the First Step Act of 2018.

Based on the Fourth Circuit's decision in United States v. Chambers, 956 F.3d 667 (4th Cir. 2020), reh'g denied (July 8, 2020), the Court is now called upon to retroactively apply the 2011 decision in United States v.

Simmons, 649 F.3d 237 (4th Cir 2011) (en banc) to the Defendant's 2009 conviction. The Defendant argues that when Simmons is applied to his criminal history, he no longer qualifies as a career offender. A close examination of the Defendant's Presentence Report is necessary to answer the question of whether he is. The PSR reflects that the Defendant has thirteen (13) prior controlled substance convictions. Prior to Simmons, at least five of these qualified as career offender predicates. The Defendant concedes that one of these convictions (95CRS7664, PSR ¶ 67) still does. [Doc. 291 at 9, 13]. Another of the Defendant's convictions would appear to remain a felony conviction of a controlled substance offense, even after Simmons. Paragraph 75 of the PSR shows a felony cocaine conviction for which the Defendant received a 20 to 24-month sentence. [Id. at 19]. This offense, however, overlapped with the Defendant's conviction in the present matter in that the sale of 0.1 grams of cocaine base sold in that earlier case was counted within the 182 grams of cocaine for which the Defendant was found responsible in this case. As such, this 0.1 gram precludes counting this offense as a career offender predicate.[3] See U.S.S.G. § 4B1.2(c)(2). In

---

[3] It is noted that the Presentence Report reflects that the Defendant was responsible for 182 grams of cocaine base, but that the offense level was calculated based on a maximum of 150 grams. There is no way to discern whether this 0.1 grams was part of the 150 grams or part of the discarded 32 grams. Hence, applying the rule of lenity, the Court determines that the 0.1 grams constitutes an overlap, precluding the use of this conviction as a career offender predicate.

addition, the Defendant has another controlled substance conviction that would qualify as a Simmons felony and a career offender predicate, but for the age of the conviction (16 years at the inception of the Defendant's offense). [Doc. 291 at 11, ¶ 62]. As such, the Defendant escapes a career offender designation by the width of a frog's hair—but escape it he does.

Therefore, the Defendant's Guideline range must now be recalculated without the career offender designation. The Defendant asserts that he faces a total offense level no higher than 23 and a criminal history category of VI. That combination would yield an advisory Guidelines range of 92 to 115 months. Because the Defendant still has one qualifying "serious drug felony," [see Doc. 291 at ¶ 75], he is subject to a statutory mandatory minimum term of ten years' (120 months') imprisonment, which becomes the term advised by the Guidelines. See 21 U.S.C. §§ 841(b)(1)(B), 851; U.S.S.G. § 5G1.1(c)(2). [Doc. 663 at 2].

Having made this calculation, the Court must pause to consider what advice the Guidelines provide in determining an appropriate sentence for the Defendant. Previously, with the career offender designation, the Defendant faced a Guideline range calling for a term of imprisonment between 262 and 327 months. With the § 851 Notice (which has never been withdrawn), that range increased to a mandatory life sentence per U.S.S.G. § 5G1.1. But

11

now, without a career offender designation, the Defendant's Guideline range calls for a 120-month term, based on precisely the same facts and applying (supposedly) precisely the same sentencing factors under 28 U.S.C. § 3553(a)—and all of this because of the very technical calculation made concerning 0.1 grams of cocaine base sold by a defendant who has 14 (including this one) controlled substance convictions. This should call into question whether the Guidelines retain any relevance at all. If nothing else, however, this enormous disparity illustrates that the former sentencing paradigm as it existed before the Fair Sentencing Act of 2010, the First Step Act of 2018, as well as Guidelines Amendments 706, 750, 780, and 782 was unduly harsh. Thus, a reexamination of the Defendant's sentence is warranted, notwithstanding the fact that his record shows that he remains as close as one can get to being a career offender without actually being one.

There are several factors in the Defendant's record that indicate that a reduction in sentence is warranted. He has been the subject of only one disciplinary action while incarcerated, and that infraction occurred more than six years ago (and appears to have been relatively minor). He has also availed himself of several educational programs and work assignments, showing that he had an eye on rehabilitation even before his life sentence was commuted. [Doc. 663]. It should also be noted that some of the drug

12

quantity calculations in the Defendant's PSR are questionable. For instance, the sales attributed to the Defendant in Paragraph 22 of his PSR occurred during the period that the Defendant was imprisoned for his conviction set out in Paragraph 75. [Doc. 291 at 6, 19]. (This may explain why the quantity was capped at 150 grams in the plea agreement, even though the PSR determined the Defendant to be responsible for 182 grams). The calculation of drug quantities would not be done in this manner in this Court today, even on the same evidence and offense conduct.

Taking all of these factors into account, including how close the Defendant remains to being a career offender, the Court determines that the approximately 184 months the Defendant has served is sufficient to fulfill the factors to be considered under 18 U.S.C. § 3553(a). Therefore, the Court will grant the Defendant's motion pursuant to the First Step Act of 2018 and reduce his sentence to a term of time served plus ten days. His term of supervised release is reduced to eight years.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for a Reduced Sentence Pursuant to Sec. 404 of the First Step Act of 2018" [Docs. 644, 645; as supplemented, Doc. 661] is **GRANTED**, and the Defendant's sentence is hereby reduced to **Time Served plus ten (10) days** and the term of supervised release is hereby reduced to a term of **eight (8) years**.

All other terms and conditions of the Defendant's Judgment [Doc. 299] shall remain in full force and effect.

The Clerk is respectfully directed to prepare an Amended Judgment in accordance with this Order.

The Clerk is further directed to provide copies of this Order to the Defendant, counsel for the Defendant, the United States Attorney, the United States Marshals Service, the United States Probation Office, and the United States Bureau of Prisons.

**IT IS SO ORDERED.**

Signed: September 1, 2020

Martin Reidinger
Chief United States District Judge